UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| SOUTHWEST REFRIGERATED WAREHOUSING SERVICES JOINT VENTURE, | § § § § | |
| | § | EP-16-CV-00421-DCG |
| *Plaintiff*, | § | |
| v. | § § | |
| M.A. & SONS, INC., | § § | |
| *Defendant*. | § § | |

## MEMORANDUM OPINION AND ORDER

Presently before the Court is Plaintiff Southwest Refrigerated Warehousing Services Joint Venture's ("Southwest") "Motion for Summary Judgment on Claim for Breach of Storage Agreement" (ECF No. 14) filed on July 11, 2017. Southwest brought this action against Defendant M.A. & Sons, Inc. ("M.A.") alleging that M.A. breached its storage agreement with Southwest. By its Motion, Southwest asks the Court to enter summary judgment against M.A. on Southwest's breach of contract claim. For the reasons that follow, the Court **DENIES** Southwest's motion.

## I. BACKGROUND[1]

This lawsuit arises from a dispute between Southwest and M.A. regarding their respective duties under a storage contract. M.A. is a New Mexico company that harvests, processes, and

---

[1] Southwest requests that the Court treat its Proposed Undisputed Facts as admitted because M.A. failed in its Response to respond in accordance with the requirements of the Court's Standing Order. Pl.'s Reply Def.'s Resp. Pl.'s Mot. Summ. J. at 1, ECF No. 21. *See also* Court's Standing Order Regarding Mots. for Summ. J. at 1–2. The Court, exercising its discretion, declines to do so here. However, moving forward, the Court reminds the parties of their duty to comply with the Court's Standing Orders and the District's Local Rules.

sells chile product.[2] Southwest operates a refrigerated storage facility in El Paso, Texas.[3] In September 2015, M.A. contracted with Southwest to store its chile[4] product in Southwest's facility subject to Southwest's "Standard Contract Terms and Conditions for Merchandise Warehouses" (the "Storage Agreement").[5] In October 2015, M.A. began accruing unpaid charges related to Southwest's storage of its chile product.[6] Unpaid charges continued to accrue until September 11, 2016.[7]

Nevertheless, in January 2016, M.A. discovered that the packaging holding a significant portion of its chile product had been damaged while being stored with Southwest.[8] The damage to the packaging containing M.A.'s chile product caused the effected chile product to spoil.[9] In order to determine the extent of the damage, M.A. had to withdraw its chile product from storage

---

[2] Def.'s Answer at 4, ECF No. 2.

[3] *Id.*

[4] The Court uses "chile" instead of "chili" because M.A. is a New Mexico company, and "chile" is the correct spelling of the word in New Mexico. *See* Barbara Quinn, *The Difference Between Chili and Chile*, Chicago Tribune (Oct. 10, 2014, 3:16 PM), http://www.chicagotribune.com/dining/recipes/sns-mct-bc-ntr-health-onnutrition-20141010-story.html.

[5] Defendant's Response to Plaintiff's Proposed Undisputed Facts ¶ 2 [hereinafter, "Def.'s Resp. Re. PUF"], ECF No. 25; Pl.'s Reply Def.'s Resp. Pl.'s Mot. Summ. J. at 2.

[6] Plaintiff's Proposed Undisputed Facts, Ex. E, at 1 [hereinafter, "Pl.'s PUF"], ECF No. 15.

[7] *Id.* at 2.

[8] Def.'s Resp. Re. PUF ¶ 23. M.A. alleges that as much as 33% of its product was damaged. Def.'s Answer at 5. However, there is dispute among the parties regarding the employment status of the employee responsible for damaging M.A.'s product and whether he was acting within the scope of his employment when the damage occurred. *See* Pl.'s Reply Def.'s Resp. Pl.'s Mot. Summ. J. at 2 ("There is no evidence that such person was authorized by Southwest, or that he was acting in any capacity on behalf of Southwest when the conduct occurred."); Def.'s Resp. Pl.'s Mot. Summ. J. at 6, ECF No. 17 ("[P]laintiff's forklift operators . . . damaged defendant's product").

[9] Def.'s Resp. Re. PUF ¶ 23.

with Southwest and transport it for inspection and testing.[10] After inspection and testing, M.A. returned the chile product to Southwest for storage while it inspected and tested the next truckload of chile product.[11] All in all, this process continued from the discovery of the damage in January 2016 until June or July 2016.[12]

According to M.A., on August 24, 2016, Southwest refused to allow it to withdraw any of its remaining undamaged packages of chile product from the facility.[13] Subsequently, on September 5, 2016, Southwest filed suit against M.A. in the El Paso County Court.[14] M.A. removed the case on September 19, 2016, on the basis of diversity jurisdiction.[15] Southwest asserts that M.A. owes it at least $122,219.02, the outstanding balance of the accrued storage charges from October 2015 to September 2016.[16] M.A. argues that Southwest owes it $355,810, the direct loss from the 355,810 pounds of chile product that Southwest allegedly damaged.[17]

## II. STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute of fact exists when evidence is sufficient for a reasonable jury to return a verdict for the non-moving party, and a fact is material if it 'might affect the

---

[10] *Id.*

[11] *Id.*

[12] *Id.* at ¶¶ 23. 36.

[13] *Id.* at ¶ 42.

[14] Notice Removal at 6, ECF No. 1.

[15] *Id.* at 1–2.

[16] Pl.'s PUF, Ex. E, at 2; Pl.'s Mot. Summ. J. at 4.

[17] Def.'s Answer at 7.

outcome of the suit.'" *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In deciding whether a genuine dispute as to any material fact exists, a trial court considers all of the evidence in the record and "draw[s] all reasonable inferences in favor of the nonmoving party," but it "refrain[s] from making credibility determinations or weighing the evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (citation and internal quotation marks omitted).

Procedurally, the party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."[18] *EEOC v. LHC Grp.*, 773 F.3d 688, 694 (5th Cir. 2014) (alterations in original) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If the moving party succeeds, "the onus shifts to the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *E.E.O.C.*, 773 F.3d at 694 (internal quotation marks omitted) (citing *Celotex Corp.*, 477 U.S. at 324). However, the nonmoving party "cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Davis v. Fort Bend Cty.*, 765 F.3d 480, 484 (5th Cir. 2014) (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (*en banc*) (*per curiam*)).

In evaluating whether the parties have met their respective burden, "the Court considers only competent summary judgment evidence." *Reeves v. Wells Fargo Bank, NA*, No. EP-14-CV-

---

[18] The Court, here, uses the terms "dispute" and "issue" interchangeably. *See* Fed. R. Civ. P. 56 advisory committee's notes to 2010 amendment (stating that in the amended rule, "genuine 'issue' becomes genuine 'dispute.' Dispute better reflects the focus of a summary-judgment determination.").

00187-DCG, 2015 WL 11598711, at *1 (W.D. Tex. Sept. 4, 2015) (citing, *inter alia*, *Goodwin v. Johnson*, 132 F.3d 162, 186 (5th Cir. 1997)); *see also* Fed. R. Civ. P. 56(c).

## III. DISCUSSION

By its Motion, Southwest requests the Court enter summary judgment against M.A. on Southwest's breach of contract claim. Southwest contends that there is no genuine dispute of material fact regarding any of the elements of its breach of contract claim. Pl.'s Mot. Summ. J. at 4. "In Texas, the elements of a claim for breach of contract are: (1) a valid contract between the plaintiff and the defendant, (2) performance or tender of performance by the plaintiff, (3) breach by the defendant, and (4) damage to the plaintiff as a result of the breach." *Garofolo v. Ocwen Loan Servicing, L.L.C.*, 669 F. App'x 219, 220 (5th Cir. 2016) (*per curiam*) (internal quotation marks omitted) (quoting *Lawyers Title Ins. Corp. v. Doubletree Partners, L.P.*, 739 F.3d 848, 858 (5th Cir. 2014)). Southwest "bears the initial burden of showing" that there is no genuine dispute of material fact as to any of the elements. *York Grp., Inc. v. Horizon Casket Grp., Inc.*, 459 F. Supp. 2d 567, 572 (S.D. Tex. 2006).

Southwest is correct that there is no dispute regarding the validity of the contract between it and M.A. Def.'s Resp. Pl.'s Mot. Summ. J. at 3. However, M.A. challenges Southwest's contention that there is no genuine issue of material fact as to any of the other elements. Specifically, it argues that Southwest cannot prove that it tendered satisfactory performance or that M.A. breached the contract. *Id.* at 3–4. It avers that Southwest damaging M.A.'s chile product was a prior material breach of the contract that excused M.A. from any further performance of the agreement. *Id.*

"It is a fundamental principle of contract law that when one party to a contract commits a material breach of that contract, the other party is discharged or excused from further

performance." *Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 196 (Tex. 2004). "A breach of contract occurs when a party fails to perform an act that it has expressly or impliedly promised to perform." *Stewart v. Sanmina Texas L.P.*, 156 S.W.3d 198, 214 (Tex. App.—Dallas 2005, no pet.). However, Southwest argues that M.A. cannot point to a provision in the Storage Agreement that Southwest breached. Pl.'s Reply Def.'s Resp. Pl.'s Mot. Summ. J. at 2. Yet, Section 11 of the Storage Agreement provides:

> Warehouse shall not be liable for any loss or damage to goods tendered, stored or handled however caused unless such loss or damage resulted from the failure by warehouse to exercise such care in regard to them as a reasonably careful person would exercise under like circumstances and warehouse is not liable for damages which could have not have been avoided by the exercise of such care.

Def.'s Answer, Ex. A, at 11. Section 11 implies that Southwest will exercise reasonable care while storing and handling the goods tendered to it. This provision provides a potential basis for M.A.'s claim that Southwest committed a prior material breach.

However, the facts surrounding the circumstances that caused the damage to M.A.'s chile product are in dispute. M.A. contends that an agent of Southwest caused the damage while in the scope of his employment. Def.'s Resp. Pl.'s Mot. Summ. J. at 4–5. Southwest asserts that there is no evidence that the person who damaged M.A.'s chile product was "acting in any capacity on behalf of Southwest when the conduct occurred." Pl.'s Reply Def.'s Resp. Pl.'s Mot. Summ. J. at 2. Thus, there are genuine issues of material fact here, and drawing reasonable inferences in favor of M.A., there is a viable claim for a prior breach by Southwest.

Nonetheless, in spite of the factual dispute regarding the circumstances of the damage, the breach must still be material for M.A.'s obligations under the contract to be potentially discharged. In determining the materiality of a breach, Texas follows the Restatement (Second) of Contracts. *Mustang Pipeline Co.*, 134 S.W.3d at 199 ("The Restatement lists five

circumstances significant in determining whether a failure to perform is material"). The five factors that Texas courts consider in determining whether a breach is material are:

> (a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;
>
> (b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;
>
> (c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;
>
> (d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of the circumstances including any reasonable assurances;
>
> (e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

*Matter of Dallas Roadster, Ltd.*, 846 F.3d 112, 127 (5th Cir. 2017) (quoting *Mustang Pipeline Co.*, 134 S.W.3d at 199). However, while "[w]hat constitutes a breach of contract is a question of law," whether the breaching conduct occurred and whether the breach is material are questions of fact. *Matter of Dallas Roadster, Ltd.*, 846 F.3d at 127. The exact facts surrounding the damage to M.A.'s chile product are in dispute. The allegation that Southwest's breach rendered 355,810 pounds of chile product unmarketable would be a material breach if the facts support it. Drawing all reasonable inferences in favor of M.A., the Court finds that there are genuine issues of material fact preventing the Court from determining whether the breaching conduct is attributable to Southwest and whether the breach is material.

However, this finding does not necessarily end the Court's inquiry. "A party who elects to treat a contract as continuing deprives himself of any excuse for ceasing performance on his own part." *Hanks v. GAB Bus. Services, Inc.*, 644 S.W.2d 707, 708 (Tex. 1982). *See also Vera v. Bank of Am., N.A.*, 569 F. App'x 349, 352 (5th Cir. 2014) (*per curiam*) ("Although Plaintiffs

allege that Defendants breached the terms of the Deed first by failing to comply with RESPA, Plaintiffs' subsequent non-performance is not excused because they continued for years after Defendants' alleged noncompliance to reside in the Property and to make mortgage payments on the Note."). *Long Trusts v. Griffin*, 222 S.W.3d 412, 415–16 (Tex. 2006) (holding that treating a contract as continuing deprives a party of ceasing performance even when the other party to the contract has committed a material breach). Thus, the Court must determine if M.A. treated the contract as continuing after the potential breach occurred. On this issue, however, neither Southwest nor M.A. briefed the Court.[19]

Accordingly, the Court DENIES summary judgment for Southwest on its breach of contract claim.

## IV. CONCLUSION

Accordingly, **IT IS ORDERED** that Plaintiff Southwest Refrigerated Warehousing Services Joint Venture's "Motion for Summary Judgment on Claim for Breach of Storage Agreement" (ECF No. 14) is **DENIED**.

So ORDERED and SIGNED this 21st day of September 2017.

DAVID C. GUADERRAMA
**UNITED STATES DISTRICT JUDGE**

---

[19] Southwest does argue that it stored M.A.'s chile product during the entirety of the period at issue in this case. Pl.'s Mot. Summ. J. at 4. Southwest further asserts that M.A. began accruing unpaid charges in October 2015, while the damage to M.A.'s chile product did not happen until January 2016. Pl.'s Reply Def.'s Resp. Pl.'s Mot. Summ. J. at 2. Nonetheless, M.A. avers that it spent much of the period at issue following the discovery of the damage to its chile product transporting it back and forth between Southwest's storage facility and its own facilities for testing to determine the extent of the damage. Def.'s Resp. Pl.'s Mot. Summ. J. at 3–4. M.A.'s behavior could indicate that it was treating the Storage Agreement as a continuing contract or attempting to assess and mitigate its damages following Southwest's alleged breach. Based on the facts before the Court, both of these explanations are plausible.